APPEAL NO. 24-142

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PAM POE, by and through her parents and next friends Penny and Peter Poe, et al.,
*Plaintiffs-Appellees*,

v.

RAÚL LABRADOR, in official capacity as Attorney General of the State of Idaho, et al.,
*Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Idaho
Case No. 1:23-cv-00269-BLW

## REPLY IN SUPPORT OF RULE 27-3 EMERGENCY MOTION FOR STAY PENDING APPEAL (RELIEF REQUESTED BY FEB. 1, 2024)

RAÚL R. LABRADOR
ATTORNEY GENERAL

ALAN HURST
SOLICITOR GENERAL

JOSHUA N. TURNER
CHIEF OF CONSTITUTIONAL LITIGATION AND POLICY

JAMES E. M. CRAIG
Chief, Civil Litigation and Constitutional Defense
OFFICE OF ATTORNEY GENERAL
700 W. Jefferson St., Suite 210
Boise, ID 83720
(208) 334-2400
alan.hurst@ag.idaho.gov
josh.turner@ag.idaho.gov
james.craig@ag.idaho.gov

JONATHAN A. SCRUGGS
HENRY W. FRAMPTON, IV
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@ADFlegal.org
hframpton@ADFlegal.org

JOHN J. BURSCH
LINCOLN DAVIS WILSON
ALLIANCE DEFENDING FREEDOM
440 First Street, NW, Suite 600
Washington, DC 20001
(202) 393-8690
jbursch@ADFlegal.org
lwilson@ADFlegal.org

DAVID H. THOMPSON
BRIAN W. BARNES
JOHN D. RAMER
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, DC 20036
202-220-9600
dthompson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

*Counsel for Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ................................................................................................ 1

ARGUMENT ....................................................................................................... 2

I.     Idaho Is Likely To Succeed On The Merits. ............................................... 2

        A.     The VCPA satisfies rational basis review. ........................................... 2

        B.     The VCPA satisfies intermediate scrutiny. .......................................... 5

        C.     The VCPA does not violate due process. .......................................... 8

II.    The Equities Favor Idaho. .......................................................................... 9

III.   The Injunction Is Overbroad. .................................................................... 9

CONCLUSION ................................................................................................... 10

CERTIFICATE OF COMPLIANCE ...................................................................... 12

CERTIFICATE OF SERVICE ............................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Brandt v. Rutledge*,
    47 F.4th 661 (8th Cir. 2022) ................................................................................ 4

*Bucklew v. Precythe*,
    139 S. Ct. 1112 (2019) ........................................................................................ 9

*Clark ex rel. Clark v. Arizona Interscholastic Association*,
    695 F.2d 1126 (9th Cir. 1982) ............................................................................ 8

*Conant v. Walters*,
    309 F.3d 629 (9th Cir. 2002) .............................................................................. 2

*Contest Promotions, LLC v. City & County of San Francisco*,
    874 F.3d 597 (9th Cir. 2017) .............................................................................. 7

*Dobbs v. Jackson Women's Health Organization*,
    597 U.S. 215 (2022) ....................................................................................... 3, 4

*Doe v. Snyder*,
    28 F.4th 103 (9th Cir. 2022) ............................................................................... 9

*Dunagin v. City of Oxford*,
    718 F.2d 738 (5th Cir. 1983) .............................................................................. 6

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
    92 F.3d 1486 (9th Cir. 1996) ............................................................................ 10

*Eknes-Tucker v. Governor of Alabama*,
    80 F.4th 1205 (11th Cir. 2023) ................................................................... 4, 5, 6

*Geduldig v. Aiello*,
    417 U.S. 484 (1974) ............................................................................................ 3

*Get Outdoors II, LLC v. City of San Diego*,
    506 F.3d 886 (9th Cir. 2007) ............................................................................ 10

*Golden Gate Restaurant Association v. City & County of San Francisco*,
    512 F.3d 1112 (9th Cir. 2008) ............................................................................ 9

*Gonzales v. Carhart*,
    550 U.S. 124 (2007) ............................................................................................ 2

*Heller v. Doe*,
　　509 U.S. 312 (1993) ...............................................................................2

*Karnoski v. Trump*,
　　926 F.3d 1180 (9th Cir. 2019) ...............................................................3

*L.W. by & through Williams v. Skrmetti*,
　　83 F.4th 460 (6th Cir. 2023) ............................................. 2, 4, 5, 6, 8, 9

*Lockhart v. McCree*,
　　476 U.S. 162 (1986) ...............................................................................6

*M.H. v. Jeppesen*,
　　2023 WL 4080542 (D. Idaho June 20, 2023) .......................................3

*Medtronic, Inc. v. Lohr*,
　　518 U.S. 470 (1996) ...............................................................................2

*Menora v. Illinois High School Association*,
　　683 F.2d 1030 (7th Cir. 1982) ...............................................................6

*Mississippi University for Women v. Hogan*,
　　458 U.S. 718 (1982) ...............................................................................4

*National Association for Advancement of Psychoanalysis v. California Board of Psychology*,
　　228 F.3d 1043 (9th Cir. 2000) ...............................................................8

*Schall v. Martin*,
　　467 U.S. 253 (1984) ...............................................................................2

*Tuan Anh Nguyen v. INS*,
　　533 U.S. 53 (2001) .................................................................................5

*United States v. Virginia*,
　　518 U.S. 515 (1996) ...............................................................................5

*Washington State Grange v. Washington State Republican Party*,
　　552 U.S. 442 (2008) ...............................................................................9

*Washington v. Glucksberg*,
　　521 U.S. 702 (1997) ........................................................................... 2, 8

*Whalen v. Roe*,
　　429 U.S. 589 (1977) ...............................................................................8

*Wyeth v. Levine*,
    555 U.S. 555 (2009) .................................................................................................. 2

**Rules**

Fed. R. Evid. 201 ............................................................................................................. 6

#### INTRODUCTION

States across the country are in the middle of addressing important matters of medical practice. Idaho's law, like that of twenty-one other states, seeks to protect children from experimental medical procedures that cause irreversible consequences. Other states have taken different approaches. And rather than let the democratic process handle these hotly disputed medical practices—which all acknowledge present risks to minors—the district court stepped in and silenced one side of the debate. This Court should allow the law to take effect.

Idaho is right on the merits. Rational-basis review applies because the law regulates *procedures*, not sex or transgender *status*. And it advances the State's interest in protecting children from dangerous procedures. Plaintiffs' contrary arguments would subject every law that mentions sex—including countless medical regulations—to intermediate scrutiny. They would then impose a least-restrictive-means test, turning intermediate scrutiny into strict scrutiny. The Constitution imposes no such standard.

On due process, there is no fundamental right to use new and experimental medical procedures. Nor can Plaintiffs justify a parental right to everything "generally accepted" by certain medical groups. That would constitutionalize nearly all experimental medical care for minors and place state medical regulation in the hands of unelected advocacy groups. There is no such right in this Nation's history or tradition.

The other stay factors favor Idaho as well. It serves the public interest to uphold laws protecting minors. Plaintiffs, meanwhile, cannot show irreparable harm, particularly when most children diagnosed with gender dysphoria desist from feelings of incongruence on their own. Beyond all this, the district court's injunction ignored

1

Article III and improperly enjoined the entire law. Plaintiffs' efforts to justify facial relief fail when even their experts agree many children should not access the regulated procedures. This Court should stay the injunction pending appeal.

## ARGUMENT

## I. Idaho Is Likely To Succeed On The Merits.

### A. The VCPA satisfies rational basis review.

Idaho will likely succeed in vindicating Idaho's regulating certain medical procedures used on children. Such health and welfare regulations have "a strong presumption of validity," *Heller v. Doe*, 509 U.S. 312, 319 (1993), particularly in areas of "medical and scientific uncertainty." *Gonzales v. Carhart*, 550 U.S. 124, 163 (2007). States have a deep interest "in protecting the integrity and ethics of the medical profession," *Washington v. Glucksberg*, 521 U.S. 702, 731 (1997), and "preserving and promoting the welfare of the child," *Schall v. Martin*, 467 U.S. 253, 265 (1984). This is one of "the historic police powers of the States," *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996), and regulating medicine is "a field which the States have traditionally occupied," *Wyeth v. Levine*, 555 U.S. 555, 565 & n.3 (2009), including "the administration of drugs by health professionals." *Conant v. Walters*, 309 F.3d 629, 639 (9th Cir. 2002).

The VCPA's regulating specific procedures for minors falls squarely within that historic power and easily passes rational-basis review. *L.W. by & through Williams v. Skrmetti*, 83 F.4th 460, 473 (6th Cir. 2023). Plaintiffs' attempts to invoke heightened scrutiny contradict controlling precedent.

**No Classification Based on Transgender Status.** Plaintiffs say that the VCPA "classifies 'based on transgender status'" because it regulates the use of these medical

2

procedures "only when it affirms a gender different from sex assigned at birth," which they say is "the defining trait of being transgender." Resp. 5 (citing App.46). But that conflates the treatment of gender dysphoria with transgender identity. Obtaining these procedures is not "the defining trait of being transgender." *Cf. id.* Regulating a procedure that only a member of a protected class "can undergo does not trigger heightened constitutional scrutiny" absent a showing of "'invidious discrimination.'" *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 236 (2022) (quoting *Geduldig v. Aiello*, 417 U.S. 484, 496 n.20 (1974)). And there is no invidious discrimination here. The VCPA regulates certain procedures because of their risks, just as many other states and countries have done. *See* Mot. § I.A.2. The growing international consensus shows that there are good reasons to worry about these procedures.

Nor did this Court say otherwise in *Karnoski v. Trump*, 926 F.3d 1180 (9th Cir. 2019) (per curiam). *Karnoski* specifically declined to address the argument "that gender dysphoria and transition are closely correlated with being transgender." *Id.* at 1201 n.18. Even in the district court decision in *M.H. v. Jeppesen*, now on appeal, the plaintiffs recognized "that, on its face, Defendants' policy appears gender-neutral and directed at a medical condition and treatment therefor." 2023 WL 4080542, at *11 (D. Idaho June 20, 2023). Plaintiffs' proxy-discrimination argument fails as a matter of law.

Plaintiffs counter that the VCPA treats similarly situated persons differently because "a cisgender male adolescent can receive testosterone to affirm his male gender identity, but a transgender male adolescent[1] cannot." Resp. 5 (citing Mot. 5). But all

---

[1] Idaho assumes "transgender male adolescent" refers to a female child who identifies as male.

3

minors may receive hormones to treat *physical conditions*—such as Kleinfelter syndrome. Those procedures present different risks, different side-effects, and different results. In medicine, patients who seek to alter their natural biological development based on gender identity are not similarly situated to patients with objectively verifiable conditions. The VCPA regulates those procedures, not protected traits.

**No Sex-Based Classification.** The VCPA also does not impose a sex classification. The VCPA does not "work[] to" anyone's "disadvantage" based on sex because it does not impose any burden the plaintiff "would not bear" if they were the opposite sex. *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 723 n.8 (1982) (cleaned up). Neither sex can undergo the regulated procedures. So the law does not "turn[ ] on" sex or use "sex at birth" to distribute access unequally. *Contra* Resp. 7 (citing *Brandt v. Rutledge*, 47 F.4th 661, 669 (8th Cir. 2022)). The law references sex to identify certain procedures and risks, then regulates them equally. "Such an across-the-board regulation lacks any of the hallmarks of sex discrimination." *L.W.*, 83 F.4th at 480*; accord Eknes-Tucker v. Governor of Ala.*, 80 F.4th 1205, 1227 (11th Cir. 2023). Plaintiffs' contrary view would subject every sex-specific medical decision by government actors to heightened scrutiny—from state-employed doctors opting not to treat prostate cancer in certain ways to programs funding breastfeeding equipment for women but not men.

That reasoning also contradicts *Dobbs*, which holds that "regulation of a medical procedure that only one sex can undergo" is not a suspect sex classification, but rather is judged by "the same standard of review as other health and safety measures." 597 U.S. at 236–37. Plaintiffs try to limit *Dobbs* and *Geduldig* to pregnancy, but Plaintiffs do not engage with their reasoning or holdings. Namely, "[i]f a law restricting a medical

4

procedure that applies only to women does not trigger heightened scrutiny, as in *Dobbs* and *Geduldig*," then the VCPA, which regulates "medical procedures unique to each sex, do[es] not require such scrutiny either." *L.W.*, 83 F.4th at 481. So it is no surprise that the Eighth Circuit has granted en banc review of the aberrant panel decision on which Plaintiffs rely. Order, *Brandt v. Griffin*, No. 23-2681 (8th Cir. Oct. 6, 2023).

Finally, Plaintiffs incorrectly charge the VCPA with unlawful sex stereotyping. "Physical differences between men and women … are enduring," *United States v. Virginia*, 518 U.S. 515, 533 (1996), and "not a stereotype." *Tuan Anh Nguyen v. INS*, 533 U.S. 53, 68 (2001). In fact, any stereotypes implicated here are inherent to the concept of gender dysphoria, the diagnosis of which turns on stereotypes—for example, whether a male child rejects "typically masculine toys, games, and activities" and avoids "rough-and-tumble play." App.591. The VCPA "does not further any particular gender stereotype," but rather regulates particular procedures for a diagnosis that turns on those stereotypes. *Eknes-Tucker*, 80 F.4th at 1229. Those medical regulations are within Idaho's sovereign prerogatives and do not invite heightened review.

**B.    The VCPA satisfies intermediate scrutiny.**

Rational basis is the proper standard, but the VCPA is constitutional even under heightened scrutiny. Plaintiffs' contrary arguments commit three basic errors. First, they urge unjustified deference to the district court's legislative fact-finding. Second, they ignore evidence that medicalized transition carries risks, lacks benefits, and involves unknowns. And third, they conflate strict and intermediate scrutiny.

**No Deference for Legislative Facts.** This case turns more on legislative facts than adjudicative ones. Adjudicative facts "are simply the facts of the particular case"—

5

things like "who did what, where, when, how, and with what motive or intent." Fed. R. Evid. 201, Advisory Comm. Notes. By contrast, legislative facts "have relevance to legal reasoning and the lawmaking process." *Id.* They include the court's evaluation of non-party-specific evidence—like scientific studies—bearing on the constitutionality of a law or practice. *Lockhart v. McCree*, 476 U.S. 162, 168–71 & n.3 (1986).

Here, the science of medicalized transition constitutes legislative facts, as Plaintiffs presented no medical evidence specific to them. Legislative facts are not subject to clear-error review. *Menora v. Ill. High Sch. Ass'n*, 683 F.2d 1030, 1036 (7th Cir. 1982). They are too intertwined with the law's constitutionality for any deference to be practical or desirable. *Lockhart*, 476 U.S. at 168 n.3 (noting risk of inconsistent decisions); *accord Dunagin v. City of Oxford*, 718 F.2d 738, 748 n.8 (5th Cir. 1983) (en banc). And this Court wouldn't owe much deference anyway to "a written record like this one and the dueling affidavits that accompany it." *L.W.*, 83 F.4th at 488.

**Medicalized Transition Is Experimental and Dangerous**. Plaintiffs ignore that the regulated interventions have different risk profiles depending on their use. The record shows that Idaho had "good reason" for regulating interventions "differently when they are used to treat a discordance between an individual's sex and sense of gender identity than when they are used for other purposes." *Eknes-Tucker*, 80 F.4th at 1234–35 (Brasher, J., concurring) (evaluating similar law under heightened scrutiny).

Start with surgical interventions. The Endocrine Society recommends against genital surgery in minors, but Plaintiffs' expert's clinic allows them. App.167, 623. So it makes sense for Idaho to regulate them. Likewise, Idaho's expert, Dr. Weiss, cited five studies specifically evaluating the prevalence of post-surgical complications in "gender-

6

affirming" mastectomies. App.410–11. But Plaintiffs would force the State to treat these risky surgeries the same as removing a cancerous breast.

Similar concerns exist for cross-sex hormones and puberty blockers. Dr. Weiss cited peer-reviewed studies evaluating risks specific to the *cross-sex* uses of estrogen and testosterone. App.406–11. Fertility is a classic example: there's no evidence that giving a male testosterone impairs his fertility, but giving a female testosterone does. App.407. So a state concerned about effects on children's fertility would regulate these uses differently. Plaintiffs' own experts admit to unknowns in how blocking puberty at its onset affects brain development. App.283, 311, 1024, 1026. They also agree the science doesn't prove puberty blockers alleviate the distress of gender dysphoria. App.909–11, 984–85. And they even agree the evidence is "very low quality" but try to say that is a "term of art" that doesn't mean what it says. Resp. 13.

**Confusing Strict and Intermediate Scrutiny**. At its core, Plaintiffs' argument depends on a strict rather than intermediate scrutiny standard. This works in two ways. First, Plaintiffs say the VCPA is underinclusive because it does not regulate every medical intervention with some of the same risks. Resp. 11. But "a law need not deal perfectly and fully with an identified problem" to materially advance the government's interests. *Contest Promotions, LLC v. City & Cnty. of S.F.*, 874 F.3d 597, 604 (9th Cir. 2017). Even if a medical procedure involves risk of impaired fertility, its probable benefit may outweigh those risks—which is not the case with medicalized transition.

Second, Plaintiffs argue the Act is overinclusive because some jurisdictions restrict certain medicalized transition interventions to clinical trials rather than prohibiting them altogether. Resp. 15. But intermediate scrutiny does not impose a

7

least-restrictive-means test, and the existence of alternatives "does not serve to invalidate the policy." *Clark ex rel. Clark v. Ariz. Interscholastic Ass'n*, 695 F.2d 1126, 1132 (9th Cir. 1982). That's particularly true here since the European policies are nearly as restrictive as Idaho's, no Plaintiff claims to be involved in a clinical trial, and Plaintiffs offer no evidence of any clinical trials underway in Europe. Besides, heightened scrutiny does not limit Idaho's policy choice to protect children from the risks at issue.

### C. The VCPA does not violate due process.

Plaintiffs' due process claim is also meritless. There is no due process right for anyone—adult or child—to demand access to an experimental drug or treatment that a state has made unlawful. *See Glucksberg*, 521 U.S. at 721; *Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1050 (9th Cir. 2000). Regulating the practice of medicine falls squarely within states' sovereign police powers, *see Whalen v. Roe*, 429 U.S. 589, 603 n.30 (1977), and the Constitution's regard for the parental right to rear their children is in no tension with a state's right to regulate the practice of medicine. *L.W.*, 83 F.4th at 475.

Plaintiffs ignore these well-established principles and claim a parental right "that is otherwise *generally available and accepted in the medical community*." Resp. 17–18 (emphasis added). But Plaintiffs' theory turns medical regulation on its head: instead of regulators deciding which treatments medical professionals may perform, the "medical community" would decide which treatments a regulator may prohibit. Respecting the states' traditional role as the regulator of medicine does not, as Plaintiffs worry, deprive parents from "the entirety of modern medicine" in selecting care for their children.

8

Resp. 16. It simply means that the Constitution does not require Idaho "to view these treatments in the same way as the majority of experts." *L.W.*, 83 F.4th at 478.

## II. The Equities Favor Idaho.

The equities favor Idaho: a stay allows it to enforce a law regulating interventions for which the "risks…outweigh the possible benefits." App.452. And though Plaintiffs say they benefit from these interventions, the science says otherwise, and Plaintiffs did not present the medical evidence this Court requires to show irreparable harm. *Doe v. Snyder*, 28 F.4th 103, 112–13 (9th Cir. 2022) (requiring evidence from treating physician). Any harm Plaintiffs face is also mitigated, and not irreparable, because Plaintiffs can access the sought-after drugs in neighboring states. A stay also serves the public interest, as set by the "responsible public officials" who passed the law. *Golden Gate Rest. Ass'n v. City & Cnty. of S.F.*, 512 F.3d 1112, 1127 (9th Cir. 2008).

## III. The Injunction Is Overbroad.

The district court's injunction awards facial relief without the necessary finding that all applications of the law are unconstitutional; it enjoins provisions that Plaintiffs lack standing to challenge; and it unnecessarily applies to parties not before the Court.

Plaintiffs conflate the standard for facial relief—the law must be "unconstitutional in all of its applications"—with the means-end fit required by intermediate scrutiny. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). They say the purported lack of a "close means-end fit" permits a facial injunction. Resp. 19. But the Supreme Court has warned against confusing the "breadth of the remedy" with the "substantive rule of law necessary to establish a constitutional violation," as Plaintiffs have done here. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1127 (2019).

9

Next, Plaintiffs confuse the facial-relief standard with standing. Their analogy shows this: they say a court could facially enjoin a law banning all girls from playing sports even though some girls don't play sports. That's because any application of the law would fail intermediate scrutiny, so a facial injunction would pass muster. The law here is different: it prohibits interventions that all agree should not be available on demand. App.623. But without the Act, patients may receive them—even genital surgeries that Dr. Connelly's clinic allows against the Endocrine Society guidelines. App.167, 623. So enjoining all applications of the Act is inappropriate.

Plaintiffs then gloss over the problem with enjoining provisions they lack standing to challenge. They don't seek surgery, but they challenge the surgery regulation because it appears in the same "section" as the estrogen regulation. Resp. 23. This doesn't work because a party cannot "leverage its injuries under certain, specific provisions to state an injury under the … ordinance generally." *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 892 (9th Cir. 2007).

Finally, Plaintiffs say a facial injunction is necessary to give them complete relief. Resp. 21. But they do not explain why they could not present their doctors—themselves ethically bound to confidentiality—with a sealed order allowing Plaintiffs to access the relevant hormones. That would resolve the alleged injury entirely. Even the case Plaintiffs cite—*Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486 (9th Cir. 1996)— narrowed the district court's injunction because it imposed "a more substantial burden" than necessary. *Id.* at 1498. At the very least, the same should happen here.

## Conclusion

The Court should stay the injunction pending appeal.

10

Dated: January 26, 2024

Respectfully submitted,

/s/ Joshua N. Turner

RAÚL R. LABRADOR
ATTORNEY GENERAL

ALAN HURST
SOLICITOR GENERAL

JOSHUA N. TURNER
CHIEF OF CONSTITUTIONAL
LITIGATION AND POLICY

JAMES E. M. CRAIG
Chief, Civil Litigation and
Constitutional Defense
OFFICE OF ATTORNEY GENERAL
700 W. Jefferson St., Suite 210
Boise, ID 83720
(208) 334-2400
alan.hurst@ag.idaho.gov
josh.turner@ag.idaho.gov
james.craig@ag.idaho.gov

JONATHAN A. SCRUGGS
HENRY W. FRAMPTON, IV
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@ADFlegal.org
hframpton@ADFlegal.org

JOHN J. BURSCH
LINCOLN DAVIS WILSON
ALLIANCE DEFENDING FREEDOM
440 First Street, NW, Suite 600
Washington, DC 20001
(202) 393-8690
jbursch@ADFlegal.org
lwilson@ADFlegal.org

DAVID H. THOMPSON
BRIAN W. BARNES
JOHN D. RAMER
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, DC 20036
202-220-9600
dthompson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

*Counsel for Appellants*

11

## CERTIFICATE OF COMPLIANCE

This reply complies with Cir. R. 27-1(d) because it contains 10 pages, excluding parts exempted by Fed. R. App. P. 27(a)(2)(B) and 32(f).

This reply complies with Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in Word 365 using a proportionally spaced typeface, 14-point Garamond.

*/s/Joshua N. Turner*
Joshua N. Turner
*Counsel for Appellants*

January 26, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2024, I electronically filed this Reply in Support of Emergency Motion For Stay Pending Appeal with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the ACMS system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

/s/ *Joshua N. Turner*
Joshua N. Turner
*Counsel for Appellants*

January 26, 2024