APPEAL NO. 24-142

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PAM POE, by and through her parents and next friends Penny and Peter Poe, et al.,

*Plaintiffs-Appellees*,

v.

RAÚL LABRADOR, in official capacity as Attorney General of the State of Idaho, et al.,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Idaho
Case No. 1:23-cv-00269-BLW

## EMERGENCY MOTION FOR RECONSIDERATION EN BANC OF ORDER DENYING STAY PENDING APPEAL
## (RELIEF REQUESTED BY FEBRUARY 28, 2024)

RAÚL R. LABRADOR
ATTORNEY GENERAL

ALAN M. HURST
Solicitor General

JOSHUA N. TURNER
Chief, Constitutional
Litigation and Policy

JAMES E. M. CRAIG
Chief, Civil Litigation and
Constitutional Defense
OFFICE OF IDAHO
ATTORNEY GENERAL
700 W. Jefferson St.
Boise, ID 83720
(208) 334-2400
alan.hurst@ag.idaho.gov
josh.turner@ag.idaho.gov
james.craig@ag.idaho.gov

JOHN J. BURSCH
LINCOLN DAVIS WILSON
ALLIANCE DEFENDING
FREEDOM
440 First Street, NW,
Suite 600
Washington, DC 20001
(202) 393-8690
jbursch@ADFlegal.org
lwilson@ADFlegal.org

JONATHAN A. SCRUGGS
HENRY W. FRAMPTON, IV
ALLIANCE DEFENDING
FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@ADFlegal.org
hframpton@ADFlegal.org

DAVID H. THOMPSON
BRIAN W. BARNES
JOHN D. RAMER
COOPER & KIRK, PLLC
1523 New Hampshire
Avenue, NW
Washington, DC 20036
202-220-9600
dthompson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

*Counsel for Appellant Raúl R. Labrador*

## CIRCUIT RULE 27-3 CERTIFICATE

The undersigned certifies that the following is the information required by

Circuit Rule 27-3:

(i)      Attorneys for the parties

<u>Counsel for Appellants Raúl Labrador, et al.</u>

Alan M. Hurst
Solicitor General
alan.hurst@ag.idaho.gov

Joshua N. Turner
Chief, Constitutional Litigation and Policy
josh.turner@ag.idaho.gov

James E. M. Craig
Chief, Civil Litigation and Constitutional Defense
james.craig@ag.idaho.gov

Idaho Office of the Attorney General
P.O. Box 83720
Boise, ID 83720
(208) 334-2400

John J. Bursch
Lincoln Davis Wilson
Alliance Defending Freedom
440 First Street, NW, Suite 600
Washington, DC 20001
(202) 393-8690
jbursch@ADFlegal.org
lwilson@ADFlegal.org

Jonathan A. Scruggs
Henry W. Frampton, IV
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@ADFlegal.org
hframpton@ADFlegal.org

i

David H. Thompson
Brian W. Barnes
John D. Ramer
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, NW
Washington, DC 20036
202-220-9600
dthompson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

Counsel for Appellees Pam Poe, et al.

Li Nowlin-Sohl
lnowlin-sohl@aclu.org
Leslie Cooper
lcooper@aclu.org
American Civil Liberties Union Foundation
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500

Richard Eppink
ritchie@wrest.coop
Casey Parsons
casey@wrest.coop
David A. Deroin
david@wrest.coop
Wrest Collective
812 W. Franklin St.
Boise, ID 83702

Brad S. Karp
bkarp@paulweiss.com
Alexia D. Korberg
akorberg@paulweiss.com
Jackson Yates
jyates@paulweiss.com
Dana L. Kennedy
dkennedy@paulweiss.com
Paul, Wiess, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

Eric Alan Stone
eric.stone@groombridgewu.com
Ariella C. Barel
ariella.barel@groombridgewu.com
Groombridge, Wu, Baughman and Stone LLP
565 5th Avenue, Suite 2900
New York, NY 10017
(332) 269-0030

Philip S. May
philip.may@groombridgewu.com
Groombridge, Wu, Baughman and Stone LLP
801 17th St. NW, Suite 1050
Washington, DC 20006
(202) 505-5830

Jordan Orosz
jorosz@paulweiss.com
Paul, Weiss, Rifkind, Wharton & Garrison LLP
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300

Dina Flores-Brewer
dfloresbrewer@acluidaho.org
ACLU of Idaho Foundation
P.O. Box 1897
Boise, ID 83701
(208) 344-9750

(ii)     Facts showing the existence and nature of the emergency

Idaho's Vulnerable Child Protection Act (VCPA) was scheduled to take effect on January 1, 2024. But on December 26, 2023, the district court enjoined the Attorney General from enforcing any provision of the Act against anyone—even though most of the Act's provisions have no effect on the Plaintiffs who sought the injunction. The district court's order is preventing Idaho from enforcing a law that protects vulnerable children from experimental and dangerous medical interventions.

On January 30, 2024, a panel of this Court (Wardlaw, Paez, and Nguyen, JJ.) denied Idaho's emergency motion to stay the injunction. As explained below, emergency en banc reconsideration is necessary to prevent immediate irreparable harm to the public and to Idaho.

(iii)     Earlier filing.

This motion is being filed within eight days of the panel's denial of the Attorney General's emergency motion to stay the injunction.

(iv)     Notice to counsel.

Counsel confirmed by email on February 7, 2024, that Plaintiffs oppose the relief requested in this motion and oppose emergency consideration. Counsel will serve the motion on opposing counsel via the Court's electronic filing system.

(v)     Submission to the district court.

The Attorney General sought relief in the district court, which the court denied on January 16, 2024.

*/s/ Alan M. Hurst*
Alan M. Hurst
*Counsel for Appellants*

February 7, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ VI

INTRODUCTION AND RULE 35 STATEMENT .................................................. 1

BACKGROUND ........................................................................................ 3

ARGUMENT ........................................................................................... 4

I.     The Injunction Is Overbroad. ............................................................ 4

II.    Idaho Is Likely To Succeed On The Merits. ....................................... 6

       A.     The VCPA does not violate equal protection. ........................... 7

             1.     The law regulates procedures, not sex or transgender status. ......... 7

             2.     The VCPA satisfies intermediate scrutiny. ....................................... 10

       B.     There is no due process right to experimental interventions. .................. 14

III.    The Other Injunction Factors Favor Idaho. .......................................... 16

CONCLUSION ....................................................................................... 16

CERTIFICATE OF COMPLIANCE ............................................................... 18

CERTIFICATE OF SERVICE ....................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Abbott v. Perez,*
 138 S. Ct. 2305 (2018) ................................................................16

*Bresgal v. Brock,*
 843 F.2d 1163 (9th Cir. 1987) .......................................................5

*Clark ex rel. Clark v. Arizona Interscholastic Association,*
 695 F.2d 1126 (9th Cir. 1982) ......................................................14

*Conant v. Walters,*
 309 F.3d 629 (9th Cir. 2002) ................................................... 7, 14

*Dobbs v. Jackson Women's Health Organization,*
 142 S. Ct. 2228 (2022) ..................................................................8

*Doe #1 v. Trump,*
 957 F.3d 1050 (9th Cir. 2020) .......................................................4

*Eknes-Tucker v. Governor of Alabama,*
 80 F.4th 1205 (11th Cir. 2023) ..................................1, 9, 10, 11, 13, 14

*Geduldig v. Aiello,*
 417 U.S. 484 (1974) ......................................................................8

*Get Outdoors II, LLC v. City of San Diego,*
 506 F.3d 886 (9th Cir. 2007) .........................................................5

*Golden Gate Restaurant Association v. City & County of San Francisco,*
 512 F.3d 1112 (9th Cir. 2008) ......................................................16

*Gonzales v. Carhart,*
 550 U.S. 124 (2007) ................................................................ 7, 15

*Griffin v. HM Florida-ORL, LLC,*
 144 S. Ct. 1 (2023) ........................................................................6

*Hecox v. Little,*
 79 F.4th 1009 (9th Cir. 2023) .................................................... 6, 8

*In re Lipitor (atorvastatin calcium) Marketing, Sales Practices & Products Liability Litigation*,
  892 F.3d 624 (4th Cir. 2018) ...................................................................13

*John Doe No. 1. v. Reed*,
  561 U.S. 186 (2010) ...............................................................................6

*Karnoski v. Trump*,
  926 F.3d 1180 (9th Cir. 2019) ..................................................................9

*L.W. ex rel. Williams v. Skrmetti*,
  73 F.4th 408 (6th Cir. 2023) ....................................................................3

*L.W. ex rel. Williams v. Skrmetti*,
  83 F.4th 460 (6th Cir. 2023) ........................................................1, 7, 8, 9

*Michael M. v. Superior Court of Sonoma County*,
  450 U.S. 464 (1981) ...............................................................................13

*Mississippi University for Women v. Hogan*,
  458 U.S. 718 (1982) ...............................................................................10

*Mitchell v. Clayton*,
  995 F.2d 772 (7th Cir. 1993) ....................................................................15

*National Institute of Family & Life Advocates v. Becerra*,
  138 S. Ct. 2361 (2018) ............................................................................15

*New York v. Ferber*,
  458 U.S. 747 (1982) ...............................................................................10

*Pickup v. Brown*,
  740 F.3d 1208 (9th Cir. 2014) ..................................................................15

*Raich v. Gonzales*,
  500 F.3d 850 (9th Cir. 2007) ....................................................................14

*Raidoo v. Moylan*,
  75 F.4th 1115 (9th Cir. 2023) ..................................................................10

*Tuan Anh Nguyen v. I.N.S.*,
  533 U.S. 53 (2001) .................................................................................13

*United States v. Salerno,*
    481 U.S. 739 (1987) .................................................................4

*Washington State Grange v. Washington State Republican Party,*
    552 U.S. 442 (2008) ...............................................................4

*Washington v. Glucksberg,*
    521 U.S. 702 (1997) ...............................................................14

*Whalen v. Roe,*
    429 U.S. 589 (1977) ...............................................................15

*Zepeda v. I.N.S.,*
    753 F.2d 719 (9th Cir. 1983) ..................................................5

## Statutes

Idaho Code § 2-212 .....................................................................8

Idaho Code § 18-1506B ...............................................................8

Idaho Code § 18-1506C...................................................3, 5, 7, 8

Idaho Code § 41-2144 .................................................................8

## Other Authorities

W.C. Hembree, et al., *Endocrine Treatment of Gender-Dysphoric / Gender-Incongruent Persons: An Endocrine Society Clinical Practice Guideline*, 102 J. Clin. Endocrinology & Metabolism 25 (2007) .................................................11

## INTRODUCTION AND RULE 35 STATEMENT

Last week, a motions panel declined to stay the district court's injunction of Idaho's Vulnerable Child Protection Act (VCPA), a law protecting children from experimental and dangerous medical interventions. The injunction is sweeping. It precludes Idaho from enforcing *any* provision of the law against *anyone*—even provisions Plaintiffs lack standing to challenge. And it enjoins applications of the law that are obviously constitutional, like prohibiting genital surgeries on minors. Every day this blanket injunction remains in place, Idaho and its children suffer irreparable harm.

Idaho enacted the VCPA in 2023 after witnessing a ten-fold increase of minors diagnosed with "gender dysphoria"—distress from misalignment of a child's sex and perceived gender. Idaho noted the increasing use of experimental, dangerous procedures on minors experiencing this condition. And Idaho saw from the medical literature—including systematic reviews from countries that pioneered medicalized transition—that these interventions carry substantial risks, unproven benefits, and staggering unknowns. So, like twenty-one other states, Idaho restricted the use of cross-sex hormones, puberty blockers, and surgeries to change a child's apparent sex.

Two other circuits have already upheld laws just like Idaho's because the Constitution allows state legislatures to regulate this area of medical practice. *L.W. ex rel. Williams v. Skrmetti*, 83 F.4th 460, 477 (6th Cir. 2023); *Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205, 1228 (11th Cir. 2023). The only court of appeals to hold otherwise has taken the matter en banc. Order, *Brandt v. Griffin*, No. 23-2681 (8th Cir. Oct. 6, 2023).

1

Yet the district court preliminarily enjoined the entire VCPA. And a panel of this Court declined to stay that injunction in an unreasoned order. Both decisions are wrong.

*First*, the injunction is grossly overbroad. To obtain facial relief, challengers must show a law is unconstitutional in every application. But Plaintiffs do not seek most treatments covered by the law and therefore lack standing to challenge several of its provisions. They did not even argue, much less prove, that every covered treatment (like genital surgery) is always appropriate for minors of every age.

*Second*, Idaho will likely prevail on appeal. The VCPA does not violate equal protection because it reasonably regulates specific medical interventions. It does not discriminate on sex or transgender status; instead it regulates procedures based on their purpose and risks. And while the VCPA need only satisfy rational-basis review, it easily survives intermediate scrutiny too. The regulated medical interventions carry risks of lifelong harm for minors who cannot adequately grasp the consequences, and no reliable scientific evidence establishes a benefit. Plaintiffs' citation to unsupported positions of advocacy organizations does not change the analysis—the Idaho legislature need not defer to such organizations when evaluating risks and setting the State's health policy. And there is no "deeply rooted" substantive due process right for parents to demand access to dangerous and untested medical procedures for minors.

*Third*, the equities favor a stay. Idaho suffers harm every day its law is enjoined, and protecting children from these harmful procedures serves the public interest.

Thus, the full court should grant en banc review, vacate the panel order, and stay the injunction. *E.g.*, *United States v. Idaho*, 82 F.4th 1296, 1296 (9th Cir. 2023) (vacating panel order and granting en banc rehearing).

2

## BACKGROUND

There is a robust, worldwide "medical and policy debate" about how best to treat gender dysphoria in minors. *L.W. ex rel. Williams v. Skrmetti*, 73 F.4th 408, 419 (6th Cir. 2023). Some advocate for procedures that block natural puberty, cause irreversible and often sterilizing physical changes, and surgically alter the body to look like the opposite sex. Others, including concerned parents, European health authorities, and systematic reviewers recognize these procedures are dangerous and unproven.

Idaho passed the VCPA to protect children from interventions that cause "irreversible physical alternations," "mutilate healthy body organs," and can leave children "sterile or with lifelong sexual dysfunction." App. to Appellants' R. 27-3 Emergency Mot. for Stay Pending Appeal 670. The VCPA prohibits three forms of medicalized transition efforts in minors: (1) surgical interventions to remove or replace breasts or sex organs, (2) cross-sex hormones (testosterone for girls, estrogen for boys) to induce the development of physical characteristics associated with the opposite sex, and (3) puberty-blocking drugs to stop a child's natural progression through puberty. Idaho Code § 18-1506C.

Suing through their parents, Plaintiffs are two adolescent males who identify as female and currently take estrogen. App.660, 667. Neither seeks any surgical procedures prohibited by the VCPA. *Id.* Neither is a female seeking testosterone. *Id.*

Though most of the VCPA doesn't affect Plaintiffs, the district court enjoined Idaho from enforcing *any* VCPA provision against *anyone*. App.66. Idaho immediately appealed and moved the district court to stay the injunction, but the district court

denied the motion. App.13, 67, 69. Idaho then moved for an emergency stay with this Court, which a panel denied with no reasoning.

## ARGUMENT

The district court's facial injunction (I) defies Article III and enjoins applications of the law that are obviously constitutional and have nothing to do with Plaintiffs. For this reason alone, the Court should stay it. In addition, Idaho (II) is likely to succeed on the merits because the law is constitutional. And (III) equitable factors heavily favor a stay. *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020) (listing factors).

## I.    The Injunction Is Overbroad.

The district court enjoined the VCPA's every application without the necessary finding that "no set of circumstances exists under which the [challenged law] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Not even Plaintiffs' experts contend that the banned interventions are *always* appropriate; they concede such interventions are "not indicated" for many kids. App.596–97, 623. And the Endocrine Society agrees that "genital surgery is not recommended to patients under age 18." App.175.

Applying the VCPA to these situations matters. For example, one of Plaintiffs' experts' clinics will allow genital surgeries on minors contrary to the Endocrine Society's recommendation. App.167, 623. Without the VCPA, these dangerous procedures are likely to occur. Since the law is not "unconstitutional in all of its applications," a facial injunction is inappropriate, *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008), and harmful to children.

Plaintiffs also lack standing to challenge the VCPA's prohibition on testosterone prescribed to females, Idaho Code § 18-1506C(3)(c)(ii), or surgeries, Idaho Code §§ 18-1506C(3)(a), (b), (d), as they do not seek these interventions. Plaintiffs must satisfy the standing requirements—injury-in-fact, causation, and redressability—"for each of the provisions [they] wish[] to challenge." *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 892 (9th Cir. 2007). Since Plaintiffs don't seek surgery or testosterone, regulating these procedures does not injure them. *Id.* (company lacked standing to challenge regulations it would not violate). Because Plaintiffs cannot challenge these provisions, the district court lacked jurisdiction to enjoin them.

In its constitutional analysis, the district court lumped together all the regulated interventions instead of separately analyzing them. App.51–52. This, too, was error, as each intervention has its own risks and benefits. While all the interventions are experimental and dangerous, they're not the same. Surgical interventions, for example, permanently remove or disform healthy body parts. App.410. Nothing justifies keeping Idaho from regulating these procedures when neither the district court nor this court has analyzed their risks, and their regulation doesn't affect Plaintiffs.

Nor should the injunction have reached beyond Plaintiffs. Without class certification, injunctions should "apply only to the individual plaintiffs." *Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). "Where relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown." *Bresgal v. Brock*, 843 F.2d 1163, 1170 (9th Cir. 1987). An injunction giving Plaintiffs access to the interventions they seek would suffice.

Instead, the district court granted sweeping relief to preserve Plaintiffs' anonymity and avoid future lawsuits. App.65. But these administrative concerns are speculative and cannot circumvent Article III's constitutional limits. A sealed court order would preserve Plaintiffs' anonymity without enjoining the entire statute. And waiting for a plaintiff who's injured by a particular regulation before enjoining it is a feature of our constitutional system, not a bug.

*Hecox v. Little* does not help Plaintiffs. This Court there found that Idaho's sports law discriminated against women and was "unconstitutional as applied to all women." 79 F.4th 1009, 1027, 1037 (9th Cir. 2023). While Idaho disagrees on both counts, *Hecox* based its injunction on these broad, quasi-facial findings. *Id.* at 1037–38 & n.22. No such breadth is at issue here. The VCPA regulates many distinct medical interventions that Plaintiffs' own experts agree should not be available to all who seek them, most of which do not affect Plaintiffs. So the Act isn't unconstitutional as applied to any broad category of people. This Court should stay the district court's overbroad injunction.[1]

## II. Idaho Is Likely To Succeed On The Merits.

Idaho's law (A) does not violate equal protection—it triggers rational-basis review and easily survives intermediate scrutiny too. Nor does the VCPA (B) violate substantive due process, since there is no traditional parental right to obtain experimental and dangerous medical procedures in general, much less these specific procedures. Idaho is likely to succeed on appeal.

---

[1] Injunctions issued in First Amendment cases are irrelevant. *See, e.g., John Doe No. 1. v. Reed*, 561 U.S. 186 (2010). Those cases present "doctrinal complexities about the scope of relief" not applicable outside the First Amendment context. *Griffin v. HM Fla.-ORL, LLC*, 144 S. Ct. 1, 2 (2023) (Statement of Kavanaugh, J.).

6

**A.    The VCPA does not violate equal protection.**

**1.    The law regulates procedures, not sex or transgender status.**

The VCPA triggers rational-basis review because it regulates based on medical procedures, not sex or transgender status. It prohibits certain interventions for minors "to alter the appearance of or affirm the child's perception of the child's sex if that perception is inconsistent with the child's biological sex." Idaho Code § 18-1506C(3). It narrowly regulates treating certain medical conditions.

"Gender dysphoria" is a DSM-5 diagnosis involving "clinically significant" distress from a strong and lasting desire to be the opposite sex. App.487. The VCPA limits certain procedures when they are used for treating a minor's gender dysphoria, not for other purposes. That is not unusual or suspect. Mastectomies used to treat breast cancers carry different risks and benefits than mastectomies used to treat psychological distress.

Regulations on medical procedures like the VCPA receive rational-basis scrutiny. As the Sixth Circuit held, "[s]tate and federal governments have long played a critical role in regulating health and welfare," and they are entitled to a presumption of validity, especially "in areas of 'medical and scientific uncertainty.'" *L.W.*, 83 F.4th at 473 (quoting *Gonzales v. Carhart*, 550 U.S. 124, 163 (2007)). States are "the primary regulators of professional conduct" with "broad police powers to regulate the administration of drugs by health professionals." *Conant v. Walters*, 309 F.3d 629, 639 (9th Cir. 2002).

That some of these procedures may be sex-specific does not mean the law discriminates based on sex. A statute regulating a procedure "that only one sex can undergo does not trigger heightened constitutional scrutiny" absent a showing of

7

"'invidious discrimination against members of one sex or the other.'" *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2245–46 (2022) (quoting *Geduldig v. Aiello*, 417 U.S. 484, 496 n.20 (1974)). That was true in *Dobbs*, where prohibiting abortion, which only women can have, did not classify by sex. *See id.* And in *Geduldig*, where "a classification based on pregnancy is not per se a classification based on sex, even though 'it is true that only women can become pregnant.'" *Hecox*, 79 F.4th at 1025 (quoting *Geduldig*, 417 U.S. at 496 n.20). And here, where the VCPA regulates some sex-specific procedures— e.g., hysterectomies—by allowing them for some conditions and not others. Idaho Code § 18-1506C(3)(a).

The district court said Idaho's law imposes sex classifications simply by invoking "biological sex." App.47. But "how could [it] not?" *L.W.*, 83 F.4th at 482. "The point of the hormones is to help a minor transition from one gender to another," so whether laws permit or prohibit that treatment, they "all face the same linguistic destiny of describing the biology of the procedures." *Id.* The district court's view would mean any reference to sex in law triggers heightened scrutiny. *Id.* But these laws are commonplace and do not warrant heightened scrutiny.[2] As *Dobbs* held, courts may not constitutionalize this vast area best reserved for democratic decision-making. *See id.* (citing *Dobbs*, 142 S. Ct. at 2285–2300).

Similarly, the VCPA does not classify based on transgender status. The district court misunderstood the law, saying, "the classified group (transgender minors) cannot

---

[2] *See, e.g.*, Idaho Code § 18-1506B (ban on "female genital mutilation"); Idaho Code § 2-212 (jury-duty exemption for "mother breastfeeding her child"); Idaho Code § 41-2144 (disability insurance coverage for mammograms).

have medical treatments that the similarly situated group (cisgender minors) can."
App.46. That's false. The VCPA allows *all* minors to receive the regulated interventions
for physical medical conditions, regardless of gender identity; any minor can receive
testosterone to treat a congenital condition like Klinefelter syndrome. But no minor can
receive it to treat gender dysphoria. *L.W.*, 83 F.4th at 481. "These distinct uses of
testosterone and estrogen stem from different diagnoses and seek different results"
based on different goals and risks. *Id.*

It does not trigger heightened scrutiny to "restrict[] a specific course of medical
treatment that, by the nature of things, only gender nonconforming individuals may
receive." *Eknes-Tucker*, 80 F.4th at 1229. "A state may reasonably conclude that a
treatment is safe when used for one purpose but risky when used for another, especially
when, as here, the treatment is being put to a relatively new use." *L.W.*, 83 F.4th at 480.
Idaho's agreement with European scientific authorities that have restricted these
procedures does not "presumptively violate the Constitution." *Id.* at 481. So while
Idaho disagrees with *Karnoski v. Trump*, 926 F.3d 1180 (9th Cir. 2019) (per curiam), that
transgender identity constitutes a quasi-suspect class, *see* Pet. for Reh'g En Banc, *Hecox
v. Little*, Nos. 20-35813, 20-35815 (9th Cir. Aug. 31, 2023), that decision is irrelevant
here.

Nor does the VCPA engage in proxy discrimination. That happens when laws
regulate "such an irrational object of disfavor" that courts can presume "an intent to
disfavor" a protected class. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270
(1993). But here the VCPA treats children the same regardless of gender identity and
rationally regulates procedures based on risk profile. It allows medicalized transitions in

adults who can better consent to the risks, and it does not preclude children from obtaining non-invasive interventions like social-transition counseling or gender-conforming speech therapy. So it does not target transgender people. This Court should not for the first time equate medicalized transition procedures in minors with status discrimination.[3] The Idaho Legislature reasonably restricted dangerous and unproven medical procedures on minors. That's a standard exercise of police power, not proxy discrimination.

Rational-basis scrutiny requires only that the law have "some conceivable legitimate purpose." *Raidoo v. Moylan*, 75 F.4th 1115, 1121 (9th Cir. 2023). Given the "uncertainty regarding benefits, recent surges in use, and irreversible effects" of the regulated procedures, the VCPA satisfies this standard. *Eknes-Tucker*, 80 F.4th at 1225.

### 2.    The VCPA satisfies intermediate scrutiny.

The VCPA also satisfies heightened scrutiny, which asks if the law "serves important governmental objectives" through means that are "substantially related to the achievement of those objectives." *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982) (cleaned up). "[S]afeguarding the physical and psychological well-being" of minors is an important objective. *New York v. Ferber*, 458 U.S. 747, 756–57 (1982). Because the regulated interventions have significant risks and unproven benefits, prohibiting them in children substantially relates to Idaho's interest in protecting

---

[3] *Karnoski* specifically reserved the question of whether regulating "gender dysphoria" is "so closely correlated with being transgender" to make it proxy discrimination. 926 F.3d at 1201 n.18.

vulnerable citizens. *See Eknes-Tucker*, 80 F.4th at 1232 (Brasher, J., concurring) (concluding Alabama's similar law would satisfy heightened scrutiny).

*Substantial Risks*. The regulated interventions carry a series of known and emerging risks, including:

- **Fertility.** Starting puberty-blocking drugs at the onset of puberty and then progressing directly to cross-sex hormones—as is common—causes infertility. App.402–403, 529. And the long-term fertility of adolescents who take cross-sex hormones after undergoing puberty is unknown. App.328, 407, 529. Females who undergo mastectomies will never breastfeed a child. App.529. And genital surgery is sterilizing. W.C. Hembree, et al., *Endocrine Treatment of Gender-Dysphoric / Gender-Incongruent Persons: An Endocrine Society Clinical Practice Guideline*, 102 J. Clin. Endocrinology & Metabolism 25 (2007).

- **Cardiometabolic health**. Cross-sex hormones increase risk of cardiovascular disease, heart attacks, strokes, osteoporosis, and hormone-dependent cancers. App.535.

- **Brain Development**. Respected scientists—many cited by Plaintiffs' experts—note that puberty blockers "may prevent key aspects of [neurological] development during a sensitive period of brain organization." App.531 The research to date is too limited to evaluate these neurodevelopmental risks. App.531–32.

- **Bone health**. Puberty blockers prevent increases in bone mineral density that typically occur during puberty. App.402, 404, 532–33. But as the New

11

York Times put it, "[a] full accounting of blockers' risk to bones is not possible." App.534.

**Lack of Proven Benefits.** No proven benefits outweigh these significant risks. In a systematic review, a team from Ontario's McMaster University concluded, "there is great uncertainty about the effects of puberty blockers, cross-sex hormones, and surgeries in young people with gender dysphoria." App.471. The evidence is "not sufficient" to support their use. *Id.* Likewise, systematic reviews commissioned by the British government found "little change" in mental health outcomes for children using puberty blockers. App.475–76. Evidence on the efficacy of puberty blockers and cross-sex hormones was "very low" quality. *Id.* The Swedish government commissioned a systematic review that also concluded there was no "reliable scientific evidence" that hormonal interventions were effective. App.452. Even WPATH's own systematic review on cross-sex hormones found "insufficient evidence to draw a conclusion about the effect of hormone therapy on death by suicide among transgender people." App.482.

By contrast, neither Plaintiffs' experts nor the medical organizations they cite conducted systematic reviews of these interventions' benefits in minors. App.479–80, 483–84. Plaintiffs' experts rely instead on personal anecdotes. App.587, 592, 599–602, 616, 624, 628–29, 632, 634–35. But evidence-based medicine "places the unsystematic observations of individual clinicians lowest on the hierarchy" of evidence.[4] App.203,

---

[4] The district court was wrong to place more weight on Plaintiffs' experts because they "currently treat adolescents with gender dysphoria." App.12, 51. Idaho's experts, unlike Plaintiffs', relied on systematic scientific evidence rather than cherry-picked studies and

463. Anecdotes cannot overcome what systematic evidence shows: in the words of the Swedish Board of Health, the "risks of puberty suppressing treatment … and gender-affirming hormonal treatment currently outweigh the possible benefits." App.452.

***Substantial Means-End Fit***. This evidence satisfies heightened scrutiny, which requires that the means employed "substantially relate" to the state's important objective of protecting vulnerable children. *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 68 (2001). Prohibiting interventions for which the "risks … outweigh the possible benefits" easily fits that bill. App.452.

The district court erroneously required a perfect means-end fit instead of a substantial one. Though the court acknowledged the "conflicting evidence regarding the risks and benefits associated with gender-affirming medical care," the court condemned the VCPA under heightened scrutiny because the interventions are purportedly "helpful" for "some." App.51–52.

That's not the test. The VCPA does not have to "be capable of achieving its ultimate objective in every instance." *Nguyen*, 533 U.S. at 70. Nor need it be "drawn as precisely as it might have been." *Michael M. v. Super. Ct. of Sonoma Cnty.*, 450 U.S. 464, 473 (1981) (plurality op.). Facing evidence that medicalized transition "carries potentially uncertain risks" and no proven benefits, the Act reasonably "regulat[es] the use of puberty blockers and hormones for [gender dysphoria] but not for other uses." *Eknes-Tucker*, 80 F.4th at 1235 (Brasher, J., concurring). It doesn't matter that some

---

anecdotal clinical experience. *In re Lipitor (atorvastatin calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 892 F.3d 624, 634 (4th Cir. 2018). And Plaintiffs' experts profit from providing medicalized transition. *See, e.g.*, App.142-43, 353. Idaho's experts are more reliable.

jurisdictions do otherwise. The existence of alternatives—even those courts may regard as "wiser"—"does not serve to invalidate the policy here since it is substantially related to the goal." *Clark ex rel. Clark v. Ariz. Interscholastic Ass'n*, 695 F.2d 1126, 1132 (9th Cir. 1982). Because the "principles of federalism … have left states as the primary regulators of professional conduct," state legislatures, not courts, are the appropriate policymakers in the face of conflicting and developing scientific evidence. *Conant*, 309 F.3d at 639. Under heightened scrutiny, Idaho can restrict procedures it reasonably regards as more harmful than helpful.

## B.    There is no due process right to experimental interventions.

Plaintiffs' substantive due process claim fails, too. For this, Plaintiffs must show a right that is "fundamental" or "deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (cleaned up). Properly framed as a right to obtain specific, experimental, and dangerous medical procedures, Plaintiffs' claims are "not 'deeply rooted' in our nation's history," since these interventions only emerged "well into the twentieth century." *Eknes-Tucker*, 80 F.4th at 1220–21.

The district court ruled for Plaintiffs by framing their claims as a parent's right to an intervention "that is generally available and accepted in the medical community." App.55. That framing is too broad. *Raich v. Gonzales*, 500 F.3d 850, 864–66 (9th Cir. 2007) (framing right as one to "use marijuana to preserve bodily integrity" rather than right to preserve bodily integrity). The question is whether parents have a deeply rooted right to access *these* experimental and dangerous interventions, not to "generally available and accepted" medical interventions. *Glucksburg*, 521 U.S. at 722–23 (framing issue as a right to assisted suicide, not a "right to die").

14

The alternative would mean parents could obtain treatments for their children that they could not receive for themselves. Indeed, it would require *Raich* to come out the other way—in favor of a substantive due process right to medical marijuana—if a parent sought the intervention on behalf of a child rather than for herself.

To avoid these results, the district court tried to limit its logic by saying that "[t]he American medical establishment overwhelmingly supports the gender-affirming medical care HB 71 bans." App.58. That proclamation misstates the science and strips away states' "authority to regulate the healthcare industry whenever the subject of regulation—the medical profession and drug companies—found such regulation unnecessary." *L.W.*, 83 F.4th at 478. No longer could states regulate "in areas where there is medical and scientific uncertainty." *Gonzales*, 550 U.S. at 163.

That's not the law. "It is, of course, well settled that the State has broad police powers in regulating the administration of drugs by the health professions." *Whalen v. Roe*, 429 U.S. 589, 603 n.30 (1977). And "a patient does not have a constitutional right to obtain a particular type of treatment or to obtain treatment from a particular provider if the government has reasonably prohibited that type of treatment or provider."[5] *Pickup v. Brown*, 740 F.3d 1208, 1236 (9th Cir. 2014) (quoting *Mitchell v. Clayton*, 995 F.2d 772, 775 (7th Cir. 1993)), *abrogated on other grounds by Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361 (2018). Idaho's restricting interventions it reasonably considered more harmful than helpful implicates no fundamental rights and satisfies due process.

---

[5] This calculus may change when the government regulates protected speech. *See* Br. of Idaho and 11 Other States as Amici Curiae in Supp. of Pet'r, *Tingley v. Ferguson*, No. 22-942 (U.S. Apr. 26, 2023), https://bit.ly/3SiN4GR. But no one argues the VCPA implicates speech.

### III.     The Other Injunction Factors Favor Idaho.

Absent a stay, the district court's injunction will continue to "inflict[] irreparable harm on" Idaho by precluding it from enforcing "its duly enacted" laws. *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018). And Idaho providers will keep harming vulnerable kids by prescribing interventions for which the "risks … outweigh the possible benefits." App.452. Allowing Idaho to prohibit these interventions will not substantially injure anyone, and Plaintiffs presented no medical evidence they would suffer harm. And because it is not "obvious" that the VCPA is unconstitutional—quite the contrary—deferring to the "responsible public officials" who enacted it serves the public interest. *Golden Gate Rest. Ass'n v. City & Cnty. of S.F.*, 512 F.3d 1112, 1127 (9th Cir. 2008). All factors favor a stay.

## CONCLUSION

The panel's unreasoned order conflicts with the Sixth and Eleventh Circuits, infringes Idaho's sovereignty, and subjects children to experimental and dangerous medical interventions. The order left in place a district court decision that ignored the limits on Plaintiffs' standing and permits genital surgeries that even the Endocrine Society does not recommend for minors. App.623. Given these extraordinary circumstances, the Court should grant en banc review, vacate the panel's order, and stay the district court's injunction pending appeal.

Dated: February 7, 2024

Respectfully submitted,

RAÚL R. LABRADOR
ATTORNEY GENERAL

ALAN M. HURST
SOLICITOR GENERAL

JOSHUA N. TURNER
CHIEF, CONSTITUTIONAL
LITIGATION AND POLICY

JAMES E. M. CRAIG
Chief, Civil Litigation and
Constitutional Defense
IDAHO OFFICE OF
THE ATTORNEY GENERAL
700 W. Jefferson St., Suite 210
Boise, ID 83720
(208) 334-2400
james.craig@ag.idaho.gov


JONATHAN A. SCRUGGS
HENRY W. FRAMPTON, IV
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@ADFlegal.org
hframpton@ADFlegal.org

/s/ Alan M. Hurst

JOHN J. BURSCH
LINCOLN DAVIS WILSON
ALLIANCE DEFENDING FREEDOM
440 First Street, NW, Suite 600
Washington, DC 20001
(202) 393-8690
jbursch@ADFlegal.org
lwilson@ADFlegal.org

DAVID H. THOMPSON
BRIAN W. BARNES
JOHN D. RAMER
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, DC 20036
202-220-9600
dthompson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

*Counsel for Appellants*

17

## CERTIFICATE OF COMPLIANCE

This motion complies with C.R. 35-4 and 40-1 because it contains 3,971 words, excluding parts exempted by Fed. R. App. P. 27(a)(2)(B) and 32(f).

This motion complies with Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in Word 365 using a proportionally spaced typeface, 14-point Garamond.

*/s/ Alan M. Hurst*
Alan M. Hurst
*Counsel for Appellants*

February 7, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2024, I electronically filed this Emergency Motion For Stay Pending Appeal with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the ACMS system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

*/s/ Alan M. Hurst*
Alan M. Hurst
*Counsel for Appellants*

February 7, 2024