No. 24-142

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

PAM POE, by and through her parents and next friends PENNY and PETER POE, et al.,

*Plaintiffs-Appellees*,

v.

RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho, et al.,

*Defendants-Appellants.*

On Appeal from the United States District Court for the
District of Idaho
No. 1:23-cv-00269-BLW (Hon. B. Lynn Winmill)

## BRIEF FOR CONSERVATIVE LEGISLATORS, FORMER LEGISLATORS, AND ACTIVISTS AS *AMICI CURIAE* SUPPORTING APPELLEES AND AFFIRMANCE

Brian T. Burgess
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4000

Jesse Lempel
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000

March 12, 2024                    *Counsel for Amici Curiae*

## TABLE OF CONTENTS

**Page**

INTEREST OF *AMICI CURIAE* ................................................................1

INTRODUCTION .....................................................................................2

ARGUMENT .............................................................................................5

I.    H.B. 71 usurps the constitutional right of parents to make important healthcare choices for their minor children. ....................................5

II.   The authority claimed by the State would provide a blueprint for States to override parents' decisions wholesale. ............................9

CONCLUSION ........................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

*John and Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*,
  78 F.4th 622 (4th Cir. 2023) ...................................................................10

*L. W. ex rel. Williams v. Skrmetti*,
  83 F.4th 460 (6th Cir. 2023) ....................................................................9

*Parham v. J.R.*,
  442 U.S. 584 (1979).........................................................................6, 7, 9

*Pierce v. Soc'y of Sisters*,
  268 U.S. 510 (1925)..................................................................................6

*Troxel v. Granville*,
  530 U.S. 57 (2000)................................................................................6, 7

*Washington v. Glucksberg*,
  521 U.S. 702 (1997)...............................................................................5, 7

STATUTES AND RULES:

Idaho Code § 18-1506C(3) ....................................................................2, 8

Fed. R. App. P. 29(a)(2).............................................................................1

OTHER AUTHORITIES:

Amy Taxin & Sophie Austin, *California sues district that requires
  parents be notified if their kids change their gender or pronouns*,
  PBS (Aug. 28, 2023),
  https://www.pbs.org/newshour/politics/california-sues-district-that-
  requires-parents-be-notified-if-their-kids-change-their-gender-or-
  pronouns......................................................................................................10

Asa Hutchinson, *Why I vetoed my party's bill restricting health care for transgender youth*, WASH. POST (Apr. 8, 2021), https://www.washingtonpost.com/opinions/asa-hutchinson-veto-transgender-health-bill-youth/2021/04/08/990c43f4-9892-11eb-962b-78c1d8228819_story.html ........................................................................3

Bill Chappell, *Texas Supreme Court OKs state child abuse inquiries into the families of trans kids*, NPR (May 13, 2022), https://www.npr.org/2022/05/13/1098779201/texas-supreme-court-transgender-gender-affirming-child-abuse .........................................................12

Brooke Migdon, *Christie knocks transgender health care bans on campaign trail: 'It's more of a parent's decision'*, THE HILL (June 23, 2023), https://thehill.com/homenews/campaign/4065197-christie-knocks-transgender-health-care-bans-on-campaign-trail/ ......................4

Ed Komenda, *Transgender minors protected from estranged parents under Washington law*, PBS (May 9, 2023), https://www.pbs.org/newshour/politics/transgender-minors-protected-from-estranged-parents-under-washington-law ................................11

Ileana Ros-Lehtinen, *Former Republican Congresswoman: The GOP Needs the LGBTQ*, NEWSWEEK (Aug. 22, 2023), https://www.newsweek.com/former-republican-congresswoman-gop-needs-lgbtq-1821713 ....................................................................4

Iowa Capital Dispatch, *Rep Chad Ingels on SF 538 1*, YOUTUBE (Mar. 12, 2023), https://www.youtube.com/watch?v=4RAHdguMepo ........................5

Jessica Chasmar, *Cincinnati schools told to 'consider' reporting child abuse if parents unsupportive of child's gender identity*, FOX NEWS (May 18, 2023), https://www.foxnews.com/politics/cincinnati-schools-told-consider-reporting-child-abuse-parents-unsupportive-childs-gender-identity ......................................................................12

Jim Vertuno, *Texas investigates hospital over care for transgender minors*, ASSOCIATED PRESS (May 5, 2023), https://apnews.com/article/texas-transgender-hospital-investigation-greg-abbott-dce466dcaa7be541c009a2fdc0b4a286 .....................12

Lulu Garcia-Navarro, *Why the G.O.P.'s Attack on Trans Rights Could Backfire on the Party*, N.Y. TIMES (Mar. 2, 2023), https://www.nytimes.com/2023/03/02/opinion/trans-gender-attacks-republican-party.html ................................................................4

Robbie Feinberg, *Maine expands ability of older teens to receive gender-affirming care without parents' consent*, WBUR (July 13, 2023), https://www.wbur.org/news/2023/07/13/teens-gender-affirming-care-parental-consent........................................................11

Samantha Valentino, *Ky. lawmakers who broke from party lines on 'anti-trans' bill explain their vote*, WKYT (May 17, 2023), https://www.wkyt.com/2023/03/17/ky-lawmakers-who-broke-party-lines-anti-trans-bill-explain-their-vote/ ........................................4

Sarah Davis, *My Republican Colleagues' Anti-Transgender Laws Threaten American Freedom*, NEWSWEEK (July 6, 2023), https://www.newsweek.com/my-republican-colleagues-anti-transgender-laws-threaten-american-freedom-opinion-1811107 ........................4

State of Ohio Exec. Dep't, Off. of the Governor, *Veto Message: Statement of Reasons for the Veto of Substitute House Bill 68* (Dec. 29, 2023), https://content.govdelivery.com/attachments/OHIOGOVERNOR/2023/12/29/file_attachments/2731770/Signed%20Veto%20Message%20HB%2068.pdf ...............................................................3

## INTEREST OF *AMICI CURIAE*

*Amici curiae* are Republicans and political conservatives from diverse backgrounds who have served as federal, state, and local officeholders.[1] They share the conservative principle of a commitment to limited government and respect for liberty, including in particular respecting the rights of families and of parents to make decisions in the best interests of their children. The full list of *Amici* is provided as an Appendix to this brief.

Parents want their children to be safe, happy, and healthy, including parents of transgender children. Reasonable people can disagree about what is best for kids, but the question presented here is *who* makes that decision: their parents or government bureaucrats? *Amici* strongly believe that the Constitution protects the traditional rights of families and prescribes a limited government that respects parental authority. Specifically, the Constitution safeguards the fundamental right of parents to make important medical decisions for their minor children without interference by the State. Idaho's law that bans gender-affirming medical care for minors with gender dysphoria (like the many similar laws recently enacted by other

---

[1] All parties have consented to the filing of this brief. *See* Fed. R. App. P. 29(a)(2). No counsel for a party authored this brief in whole or in part. No party, no counsel for a party, and no person other than *Amici* and their counsel made a monetary contribution to fund the preparation or submission of this brief.

states) directly infringes this right by usurping the parental role and improperly intruding into a family's medical choices.

In light of *Amici*'s extensive and varied experience working to protect and support parents and families through the political process, *Amici* believe that this brief will assist the Court with its consideration of this case.

## INTRODUCTION

Parents know what is best for their children far better than the government does. And in our constitutional system, parents have the fundamental right to make critical decisions about the care of their own children, including medical decisions. While the government has a role to play in keeping kids safe, that role is limited, and it does not justify the State second-guessing the judgments of parents acting in good faith who are best positioned to know what is in the best interest of their children. States have no business overruling the decisions of fit parents who make an informed medical choice for their children that is supported by their doctors, by the medical profession more generally, by the children themselves, and by their conscience. That is not limited government, and it is not constitutional.

Idaho has done just that by enacting H.B. 71, which bans certain medical procedures for minors if (and only if) those procedures are performed "for the purpose" of a gender transition or affirmation. Idaho Code § 18-1506C(3). Numerous other states have recently adopted similar bans, some of which make it a

2

crime to provide such care or consider the facilitation of such care to be child abuse. These laws are nothing less than "a vast government overreach," as the former Republican Governor of Arkansas Asa Hutchinson put it in explaining why he vetoed similar legislation, because they anoint "the state as the definitive oracle of medical care, *overriding parents*, patients and health-care experts."[2]  Likewise, the Republican Governor of Ohio, Mike DeWine, recently vetoed similar legislation because he rejected the premise that "the State . . . knows what is best medically for a child rather than the two people who love that child the most, the parents"— particularly when the State's decision is "also against the medical judgement of the treating physician and the treating team of medical experts."[3]

Other prominent defenders of limited government recognize this as well. Former New Jersey Governor Chris Christie, for instance, emphasized that how to care for a transgender child is "more of a parent's decision than a governor's decision," because "parents are the people who are best positioned to make these

---

[2] Asa Hutchinson, *Why I vetoed my party's bill restricting health care for transgender youth*, WASH. POST (Apr. 8, 2021), https://www.washingtonpost.com/opinions/asa-hutchinson-veto-transgender-health-bill-youth/2021/04/08/990c43f4-9892-11eb-962b-78c1d8228819_story.html (emphasis added).

[3] State of Ohio Exec. Dep't, Off. of the Governor, *Veto Message: Statement of Reasons for the Veto of Substitute House Bill 68* (Dec. 29, 2023), https://content.govdelivery.com/attachments/OHIOGOVERNOR/2023/12/29/file_attachments/2731770/Signed%20Veto%20Message%20HB%2068.pdf.

judgments" and "the government should [n]ever be stepping into the place of the parents."[4]   Many of *Amici* have also publicly defended parental rights from legislation akin to Idaho's.[5]

The authority claimed by the State here to trample on parents' decisions about their own kids sweeps far beyond this particular legislation.  People of good faith have strongly held views on both sides of debates on issues involving children and gender dysphoria, and if Idaho and other states can impose their will on parents, then so can states and local governments that think differently—for instance, by allowing (or even requiring) schools to shut parents out of discussions regarding their child's gender expression.  Beyond the gender-identity context, there is no end to the kinds of parental decisions that local, state, or federal officials could hijack whenever they

---

[4] Brooke Migdon, *Christie knocks transgender health care bans on campaign trail: 'It's more of a parent's decision'*, THE HILL (June 23, 2023), https://thehill.com/homenews/campaign/4065197-christie-knocks-transgender-health-care-bans-on-campaign-trail/.

[5] *See, e.g.*, Sarah Davis, *My Republican Colleagues' Anti-Transgender Laws Threaten American Freedom*, NEWSWEEK (July 6, 2023), https://www.newsweek.com/my-republican-colleagues-anti-transgender-laws-threaten-american-freedom-opinion-1811107; Ileana Ros-Lehtinen, *Former Republican Congresswoman: The GOP Needs the LGBTQ*, NEWSWEEK (Aug. 22, 2023), https://www.newsweek.com/former-republican-congresswoman-gop-needs-lgbtq-1821713; Samantha Valentino, *Ky. lawmakers who broke from party lines on 'anti-trans' bill explain their vote*, WKYT (May 17, 2023), https://www.wkyt.com/2023/03/17/ky-lawmakers-who-broke-party-lines-anti-trans-bill-explain-their-vote/; Lulu Garcia-Navarro, *Why the G.O.P.'s Attack on Trans Rights Could Backfire on the Party*, N.Y. TIMES (Mar. 2, 2023), https://www.nytimes.com/2023/03/02/opinion/trans-gender-attacks-republican-party.html.

think they know better than parents. Government has no business interfering with parental value judgments in this manner. The Constitution wisely deposits that power in the hands of parents "to direct the education and upbringing of [their] children." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

An Iowa Republican legislator—and a signatory to this brief—who voted against a bill similar to this one hit the nail on the head: These bans ignore the basic and inviolable principle that "parents matter."[6]  *Amici* agree, and so does the Constitution. This Court should affirm the district court's preliminary injunction.

## ARGUMENT

Among other conclusions, the district court held "that the parent plaintiffs enjoy a fundamental right to seek a specific form of medical treatment for their children, which would include the gender-affirming medical care banned by HB 71." 1-ER-069. *Amici* submit that parents' due process right to direct the medical care of their children supplies ample basis to affirm the district court's decision, and this Court should affirm on that ground.

**I.    H.B. 71 usurps the constitutional right of parents to make important healthcare choices for their minor children.**

Reflecting bedrock "concepts of the family as a unit with broad parental authority over minor children," "our constitutional system long ago rejected any

---

[6] Iowa Capital Dispatch, *Rep Chad Ingels on SF 538 1*, YouTube (Mar. 12, 2023), https://www.youtube.com/watch?v=4RAHdguMepo.

5

notion that a child is 'the mere creature of the State.'" *Parham v. J.R.*, 442 U.S. 584, 602 (1979) (quoting *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 535 (1925)).  A long line of Supreme Court cases firmly establishes "that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality opinion) (collecting "this extensive precedent").  This core right encompasses the right "to recognize symptoms of illness and to seek and follow medical advice." *Parham*, 442 U.S. at 602.

In keeping with this constitutional principle, it is generally the *parents'* decision, not the State's, whether to seek certain medical treatments for their minor children—particularly when those treatments are widely accepted in the medical community and are legal for adults.  By enacting H.B. 71, the State claims the power to make that decision instead of the child's parents.  In this Court, Idaho says that it can deprive parents of the constitutional right to make significant medical decisions based on the State's view that the parent's choice is "illegal" and "risky."  Opening Br. 38 (Idaho arguing that "illegal medical decisions do not become constitutionally protected simply because parents want them for their child or received someone's 'medical advice' to do so"); *id.* at 2 (arguing that "there is no deeply rooted and fundamental right to access unproven and risky medical interventions").  But the Supreme Court's *Parham* decision teaches the opposite:  "Simply because the

decision of a parent … involves risks does not automatically transfer the power to make that decision from the parents to some agency or officer of the state." 442 U.S. at 603. The State's effort to usurp the parental role and responsibility is directly contrary to the Constitution's guarantee of "liberty," and the sphere of authority the Constitution reserves for parents "to direct the … upbringing" of their own children. *Glucksberg*, 521 U.S. at 720.

At bottom, the Idaho statute at issue here is an attempt by "the State to inject itself into the private realm of the family to further question the ability of [a fit] parent to make the best decisions concerning the rearing of that parent's children." *Troxel*, 530 U.S. at 68-69. Indeed, in defense of the State's position, the 23 *Amici* States lapse into rhetoric drawing upon the discredited notion "that a child is 'the mere creature of the State.'" *Parham*, 442 U.S. at 602 (citation omitted). Over and over, they argue that "States like Idaho can choose" not to "subject[] *their* children to irreversible transitioning treatments," that "Idaho … acted to protect *its* children," and that "[t]he Constitution does not require Idaho to offer *its* children as guinea pigs." Br. of Alabama, Arkansas, and 21 Other States as *Amici Curiae* Supporting Appellants and Reversal 2, 20, 24 (emphases added). It should be uncontroversial that parents have primary authority over their children, not the State. This statute violates that elementary truth and, with it, the Constitution.

7

Crucially, this is not a situation in which the State has deemed the medical treatments at issue to be too risky, unsafe, or experimental as a *general* matter.  In fact, these treatments are fully legal and available for adults.  Many of these same treatments (for example, hormone therapy) also remain legal for *all minors* so long as they are not performed "for the purpose" of a gender transition or affirmation— even though such treatments for a different purpose have *the same* physiological effects.  Idaho Code § 18-1506C(3).  Instead, H.B. 71 makes a paternalistic rule *for minors as a category* that draws a bright-line between 17-year-olds and 18-year-olds.  The statute's ban turns entirely on the general age of majority because it is aimed at shielding children from choices they would be free to make as adults.[7]  As the State admits, "Idaho … does not prohibit medicalized transition in adults because of their increased capacity to provide informed consent."  Opening Br. 28.  Of course, that is generally the parents' duty—but the State does not trust parents to make that decision for their own children.

The theory underlying this ban is plain: Because children cannot make choices about medical care for themselves given the potential long-term implications, the

---

[7] Similarly, for example, Arkansas has explained that "[a]dults remain free to undergo the same experimental procedures that the Act prohibits for minors.  For example, a practitioner cannot perform a gender-transition procedure on a girl one month *before* her eighteenth birthday but can perform it one month *after* her eighteenth birthday."  Br. of Defendants-Appellants 29-30, *Brandt v. Rutledge*, No. 21-2875 (8th Cir. Nov. 15, 2021).

State must step in, vetoing the judgments of not just children but their parents.  That approach defies the concept of family embedded in our constitutional system, which charges *parents* with making important medical decisions for their children, not a state legislature.  *See Parham*, 442 U.S. at 603 ("Simply because the decision of a parent … involves risks does not automatically transfer the power to make that decision from the parents to some agency or officer of the state.").  To put it bluntly, the State thinks it knows how to take care of children better than the children's own parents, and, even more disturbingly, that it has the right to substitute its own judgment for that of the parents.  That view is anathema to the Constitution.[8]

## II.    The authority claimed by the State would provide a blueprint for States to override parents' decisions wholesale.

While the State may prefer to override certain choices parents make about the care of their children, the authority it claims would open Pandora's box.  It takes

---

[8] Contrary to the State's argument, it is beside the point that a "parent's right to make decisions for a child does not sweep more broadly than an adult's right to make decisions for herself."  Opening Br. 37 (quoting *L. W. ex rel. Williams v. Skrmetti*, 83 F.4th 460, 475 (6th Cir. 2023)).  No one doubts that the State may *generally* ban certain risky medical treatments or procedures.  What it cannot do, though, is enact a special ban only for children on the theory that the State, not parents, has the right to make important medical decisions that children cannot make on their own.  As Judge White put it, Idaho "did not ban treatment for adults and minors alike; [it] banned treatment for minors *only*, despite what minors or their parents wish."  *L. W.*, 83 F.4th at 510 (White, J., dissenting).  Thus, "the issue is the *who*—who gets to decide whether a treatment otherwise available to an adult is right or wrong for a child?  Do parents have the right to make that call, or does the government get to decide for itself, notwithstanding the parents' determinations of what is in their children's best interests?"  *Id.*

little imagination to picture a different local government, state legislature, or even Congress enacting policies that run roughshod over the rights of parents in a way that offends the preferences of Idaho's current government. A few examples illustrate the point.

Consider a school district in Maryland that enacted a policy authorizing schools to implement "gender support plans" that help students pursue a gender transition without the knowledge or consent of the students' parents. *John and Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622, 626 (4th Cir. 2023). Indeed, the policy specifically provides that "the school may withhold information about a student's gender support plan 'when the family is nonsupportive.'" *Id.* at 627.[9] In that case, a group of parents understandably argued that "the Parental Preclusion Policy violates their fundamental right to raise their children under the Fourteenth Amendment of the Constitution." *Id.* But that fundamental right cannot extend only to parents who make parental decisions of which the government approves.

---

[9] Pushing the same line, California is already suing a school district that "requir[es] schools to notify parents if their children change their gender identification or pronouns." Amy Taxin & Sophie Austin, *California sues district that requires parents be notified if their kids change their gender or pronouns*, PBS (Aug. 28, 2023), https://www.pbs.org/newshour/politics/california-sues-district-that-requires-parents-be-notified-if-their-kids-change-their-gender-or-pronouns.

The example above is not isolated. Maine recently enacted legislation permitting minors to obtain hormones for the purpose of gender transitions *without parental consent* in some circumstances. *See* Robbie Feinberg, *Maine expands ability of older teens to receive gender-affirming care without parents' consent*, WBUR (July 13, 2023), https://www.wbur.org/news/2023/07/13/teens-gender-affirming-care-parental-consent ("Transgender 16- and 17-year-olds in Maine can now, in certain situations, receive gender-affirming hormone therapy without a parent's consent."). And Washington changed its law to allow shelters housing a minor "seeking gender-affirming care" not to contact the parents. Ed Komenda, *Transgender minors protected from estranged parents under Washington law*, PBS (May 9, 2023), https://www.pbs.org/newshour/politics/transgender-minors-protected-from-estranged-parents-under-washington-law. If parental rights are cast aside in this case at the altar of State authority, what principled basis would be left to oppose such laws that also seek to remove parents from core decisions involving their children?

The principle of state control that Idaho and other states espouse may extend even further, putting families at risk of outright losing their children. Consider Texas's policy of investigating parents for "child abuse" simply for choosing to

provide gender transition care to their children.[10]  As this litigation makes clear, many people and medical professionals believe that it endangers children with gender dysphoria *not to* provide them with gender-affirming care.  The district court found that "gender-affirming medical care improves the wellbeing of some adolescents with gender dysphoria, and delaying or withholding such care can be harmful, potentially increasing depression, anxiety, self-harm, and suicidal ideation."  1-ER-025.  Against this backdrop, it is not hard to imagine jurisdictions on the other side of the culture war authorizing a prosecutor or child protective services to investigate parents for neglect or even "child abuse" simply because the parents do not allow their child to undergo any gender transition procedures.  Indeed, the Cincinnati Board of Education has advised public schools "to 'consider' reporting child abuse to child protective services if a student's parents are unsupportive of his or her gender identity."[11]

---

[10] Bill Chappell, *Texas Supreme Court OKs state child abuse inquiries into the families of trans kids*, NPR (May 13, 2022), https://www.npr.org/2022/05/13/1098779201/texas-supreme-court-transgender-gender-affirming-child-abuse; *see also* Jim Vertuno, *Texas investigates hospital over care for transgender minors*, ASSOCIATED PRESS (May 5, 2023), https://apnews.com/article/texas-transgender-hospital-investigation-greg-abbott-dce466dcaa7be541c009a2fdc0b4a286.

[11] Jessica Chasmar, *Cincinnati schools told to 'consider' reporting child abuse if parents unsupportive of child's gender identity*, FOX NEWS (May 18, 2023), https://www.foxnews.com/politics/cincinnati-schools-told-consider-reporting-child-abuse-parents-unsupportive-childs-gender-identity.

Examples of potential government overreach stretch far beyond the context of transgender identity and medical care, and could easily be multiplied. For instance, consider whether states or local jurisdictions might enact laws or policies that disregard parental choice and consent regarding "unhealthy" foods, "dangerous" sports or athletic activities, or even ear piercings for girls and circumcision for boys. No one wants a system in which parents' basic judgments in raising and caring for their children are overridden at every turn by politicians and bureaucrats who disagree with the parents' choices. But that is where the State's logic leads, putting a host of routine parental decisions up for grabs by the State.

Thankfully, the Constitution safeguards the rights of *all* parents against governmental policies that seek to control their children, regardless of whether the policy is popular with conservatives or liberals. This Court should enforce that constitutional protection and affirm the district court's preliminary injunction.

13

## CONCLUSION

For the foregoing reasons, the decision of the district court should be affirmed.


Dated: March 12, 2024          Respectfully submitted,

                        *s/ Brian T. Burgess*
                        Brian T. Burgess
                        GOODWIN PROCTER LLP
                        1900 N Street, NW
                        Washington, DC 20036
                        (202) 346-4000

                        Jesse Lempel
                        GOODWIN PROCTER LLP
                        100 Northern Avenue
                        Boston, MA 02210
                        (617) 570-1000

                        *Counsel for Amici Curiae*

14

# APPENDIX

*Amici* are the following individuals:

Kim Banta (R-KY),
> Member of the Kentucky House of Representatives, 2019-Present.

Sarah Davis (R-TX),
> Member of the Texas House of Representatives, 2011-2021.

Jordan Willow Evans (R-MA),
> Town Constable of Charlton, Mass., 2016-2020; Member of the Dudley-Charlton Regional School Committee, 2020-2022; and the Nation's first openly transgender elected Republican.

Chad Ingels (R-IA),
> Member of the Iowa House of Representatives, 2021-Present.

Ileana Ros-Lehtinen (R-FL),
> Member of the U.S. House of Representatives, 1989-2019.

Logan Phillips (R-OK),
> Member of the Oklahoma House of Representatives, 2018-2022.

Chris Sander (R-MO),
> Member of the Missouri House of Representatives, 2021-Present.

Dan Zwonitzer (R-WY),
> Member of the Wyoming House of Representatives, 2005-Present.

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 2,475 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it appears in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  March 12, 2024                  *s/ Brian T. Burgess*

Brian T. Burgess
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4000

## CERTIFICATE OF SERVICE

I, Brian T. Burgess, hereby certify that on March 12, 2024, I caused the foregoing Brief for Conservative Legislators, Former Legislators, and Activists as *Amici Curiae* Supporting Appellees and Affirmance to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: March 12, 2024            *s/ Brian T. Burgess*

Brian T. Burgess
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4000

*Counsel for Amici Curiae*