APPEAL NO. 24-142

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PAM POE, by and through her parents and next friends Penny and Peter Poe, et al.,
*Plaintiffs-Appellees*,

v.

RAÚL LABRADOR, in official capacity as Attorney General of the State of Idaho, et al.,
*Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Idaho
Case No. 1:23-cv-00269-BLW

## APPELLANT LABRADOR'S MOTION TO SUPPLEMENT THE RECORD OR TAKE JUDICIAL NOTICE

RAÚL R. LABRADOR
ATTORNEY GENERAL
ALAN M. HURST
SOLICITOR GENERAL
JOSHUA N. TURNER
Chief of Constitutional
Litigation and Policy
James E. M. Craig
Chief, Civil Litigation and
Constitutional Defense
Office of Idaho Attorney
General
700 W. Jefferson St.
Boise, ID 83720
(208) 334-2400
alan.hurst@ag.idaho.gov
josh.turner@ag.idaho.gov
james.craig@ag.idaho.gov

JOHN J. BURSCH
LINCOLN DAVIS WILSON
ALLIANCE DEFENDING
FREEDOM
440 First Street, NW,
Suite 600
Washington, DC 20001
(202) 393-8690
jbursch@ADFlegal.org
lwilson@ADFlegal.org

JONATHAN A. SCRUGGS
HENRY W. FRAMPTON, IV
ALLIANCE DEFENDING
FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@ADFlegal.org
hframpton@ADFlegal.org

DAVID H. THOMPSON
BRIAN W. BARNES
JOHN D. RAMER
COOPER & KIRK, PLLC
1523 New Hampshire
Avenue, NW
Washington, DC 20036
202-220-9600
dthompson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

*Counsel for Appellant Raúl R. Labrador*

## INTRODUCTION

Appellant Raúl R. Labrador moves to supplement the record with the documents outlined in the attached Declaration of Alan Hurst, or to treat them as legislative facts that may be considered regardless of whether they are in the record. The documents concern the World Professional Association for Transgender Health (WPATH) and its Standards of Care 8 (SOC-8), one of the district court's key grounds for ruling the treatments at issue in this case are safe and effective.

The documents show that, far from being disinterested medical science, WPATH's standards were written with an eye to litigation—they were reviewed by lawyers to assess their effect on "civil rights available to trans people and providers," and they were revised when the Biden Administration expressed concern that a prior draft might support legal efforts to restrict access to the treatments. The documents also show that WPATH required any scientific publications based on its SOC-8 data to be "thoroughly scrutinized and reviewed to ensure that publication does not negatively affect the provision of transgender healthcare in the broadest sense"—i.e., that it refused to publish science that might support Idaho's position in this case. App.109.

Idaho attempted to disclose WPATH's documents to Plaintiffs, but they refused to consent to the entry of the necessary protective order, despite having previously agreed to it. The district court then denied General Labrador's motion for entry of that protective order. General Labrador thus had no option but to come to this Court. The Court should grant the motion and consider these documents while deciding the important questions in this case.

1

## BACKGROUND

**I.　The district court found that WPATH's SOC-8 recommended "safe, effective, and medically necessary" "treatment for gender dysphoria."**

Apart from its interpretation of the operative legal principles, the district court placed dispositive weight on the safety, efficacy, and medical necessity of medical treatment according to WPATH's SOC-8. 1-ER-23–24. It thought that the "parties' key point of disagreement" centered on the "medical interventions" under those Standards of Care. 1-ER-23. The court "carefully consider[ed] the voluminous evidence on this point." 1-ER-24. That record included Plaintiffs' expert and WPATH member Christine Brady praising SOC-8 as "based on the best available science and expert professional consensus." 4-ER-870, 877. According to Dr. Brady, WPATH developed SOC-8 "based on data derived from independent systematic literature reviews, where available, background reviews and expert opinions." 4-ER-877.

Based on that evidence, the court found that "the treatment for gender dysphoria—when provided in accordance with the guidelines published by WPATH and the Endocrine Society, and which may include medical interventions such as puberty blockers, hormone therapy, and surgeries—is safe, effective, and medically necessary for some adolescents." 1-ER-24. It ruled that "the weight" of this "evidence shows not only that gender-affirming medical care delivered in accordance with WPATH and Endocrine Society guidelines is helpful and necessary for some adolescents, but also that withholding such care is harmful." 1-ER-51.

2

**II.  New evidence from WPATH shows that it developed its standards of care based on litigation strategy and political ideology—not the best available evidence.**

Newly produced evidence invalidates the district court's finding on this "key point." In July 2023, before the district court stayed the case, General Labrador served a subpoena on WPATH asking for the same documents it had produced in *Boe v. Marshall*, 2:22-cv-00184-LCB-CWB (M.D. Ala.), a similar case involving a challenge to Alabama's Vulnerable Child Compassion and Protection Act. Decl. of Alan M. Hurst ¶ 3 (Hurst Decl.). In October 2023, WPATH responded to that subpoena with the same documents it produced in the *Boe* case. Hurst Decl. ¶ 4. Some of those *Boe* documents have now been publicly released. Hurst Decl. ¶ 11. Those documents support Idaho's Vulnerable Child Protection Act in four broad ways.

First, the documents show WPATH understood SOC-8 lacked a firm evidentiary foundation. As the chair of WPATH's Standards of Care, Dr. Eli Coleman summarized, WPATH was "not able to be as systematic as [it] could have been (e.g., [it] did not use GRADE [Grading of Recommendations, Assessment, Development and Evaluations] explicitly)." App.333. He was "painfully aware that there are many gaps in research to back up [WPATH's] recommendations." App.330. One author of SOC-8 refused to submit to a systematic review of the evidence supporting WPATH's recommendations because of "concerns"—"echoed by … social justice lawyers"—that such reviews "reveal[ed] little or no evidence and put[ ] [WPATH] in an untenable position in terms

3

of affecting policy or winning lawsuits." App.113. A WPATH member even acknowledged "that a global consensus on 'puberty blockers' does not exist." App.138.[1]

Second, WPATH understood that children cannot give informed consent to procedures with such long-lasting consequences. Dr. Coleman said about children in early puberty: "at their age – they would not know what they want." App.134. He also noted the "increasing number of regret cases." App.330.

Third, WPATH crafted its SOC-8 to help litigation positions like the ones taken in this case. Prior to publication, WPATH had attorneys review SOC 8 to identify "any conflicts" between it and the "civil rights available to trans people and providers." App.214. WPATH's president questioned why the purportedly "clinical guidelines" needed to pass legal review. App.213. But WPATH nonetheless identified the ACLU, Transgender Legal Defense & Education Fund, and Lambda Legal as possibilities to review SOC-8. App.223. One author "hope[d]" SOC8 would "land in such a way as to have serious effect in the law and policy settings … even if the wording isn't quite correct." App.227.

Fourth, the Biden Administration successfully pushed WPATH to eliminate age requirements for medical treatments in SOC-8. WPATH sent the draft SOC to transgender-identifying Assistant HHS Secretary Adm. Rachel Levine who "was very

---

[1] The U.S. chapter of WPATH formally reprimanded its president, Dr. Erica Anderson, for publicly discussing concerns about "sloppy" care for gender dysphoric youth and "more young adults who will regret having gone through this process." App.121–22. One of the authors of the child and adolescent chapters of SOC-8 feared that "if WPATH continues to muzzle clinicians and relay[s] the message to the public that they have no right to know about the debate, WPATH will become the bad guy and not the trusted source." App.123–26.

4

concerned that having ages (mainly for surgery) will affect access to health care for trans youth and maybe adults too." App.257. WPATH initially objected, with its former president lamenting "that politics always trumps common sense and what is best for patients." App.260. Adm. Levine requested and received multiple follow-up meetings with WPATH. App.279–82.[2] Days before SOC-8's scheduled publication, the American Academy of Pediatrics likewise demanded that WPATH remove the age recommendations. App.284–85. WPATH leaders saw the political threat because AAP was "a MAJOR organization" that "is typically very pro-transhealth/gender affirming care"; "[c]learly, if AAP were to publicly oppose the SOC8, it would be a major challenge for WPATH." App.305. WPATH leadership caved and agreed to remove the age minimums. App.307. That "led to [AAP] not formally opposing the SOC. Yes this is highly confidential." App.321.

Also in the *Boe* litigation, Johns Hopkins University produced documents showing that WPATH asked it to generate systematic reviews defending its SOC-8 but then rejected Johns Hopkins's request to publish two manuscripts based on the reviews because it failed to comply with WPATH's policy for using SOC-8 data. App.104. That policy required Johns Hopkins to seek "final approval" of the proposed article from a SOC-8 leader and "at least one member of the transgender community." App.93–99. WPATH explained that it was of "paramount" importance "that any publication based on WPATH SOC8 data [be] thoroughly scrutinized and reviewed to ensure that

---

[2] An author also had a call with Adm. Levine who claimed that WPATH's "failure … to be ready with SOC8" frustrated "optimal policy progress." App.245. The author took that "as a charge from the United States government to do what is required to complete [SOC8] immediately." App.245.

5

publication does not negatively affect the provision of transgender healthcare in the broadest sense." App.109.

### III. The district court refused to dissolve the stay and allow Idaho to disclose this evidence to Plaintiffs.

Both Plaintiffs and the district court stonewalled Idaho's efforts to disclose this evidence. WPATH produced its documents to Idaho as "Confidential" with the expectation that they would be disclosed only subject to a protective order. Hurst Decl. ¶ 5. The parties here had agreed to a protective order in September 2023, but no protective order was ever entered. Then, upon learning of the WPATH documents, Plaintiffs refused to agree to the entry of the order to which they had previously agreed. Hurst Decl. ¶ 6. General Labrador moved the district court to lift its stay of proceedings and enter a protective order so that he could produce the documents to Plaintiffs and then move to dissolve the injunction. Hurst Decl. ¶ 7. But Plaintiffs opposed the motion and the district court denied it. Hurst Decl. ¶¶ 8–9. The district court refused to lift the stay and ruled that it lacked jurisdiction to dissolve the injunction, even based on the WPATH documents. App.15. Idaho therefore couldn't produce the documents to Plaintiffs or even file them under seal with the district court. *Id.*

## ARGUMENT

### I. The Court should allow supplementation of the record.

This Court has "inherent authority to supplement the record in extraordinary cases." *Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003) (citing *Dickerson v. Alabama*, 667 F.2d 1364, 1366–68 & n.5 (11th Cir. 1982)). Three key factors from this case law warrant supplementation here: (1) "the proper resolution of the substantive issues" is

6

"beyond any doubt"; (2) "a decision to remand" to review the additional facts would "be contrary to both the interests of justice and the efficient use of judicial resources"; and (3) Plaintiffs had notice of the materials. *Dickerson*, 667 F.2d at 1367–68.

First, the documents show Idaho's law undoubtedly passes both rational basis and intermediate scrutiny. The attached documents demonstrate WPATH itself knew "the risks of" its recommended "treatments and the flaws in existing research" such that "no one" can "dispute[ ] that these treatments carry risks or that the evidence supporting their use is far from conclusive." *See* Opening Br. 24 (quoting *L.W. ex rel. Williams v. Skrmetti*, 83 F.4th 460, 489 (6th Cir. 2023)). That more than meets the state's rational-basis burden. And under intermediate scrutiny, Idaho has "wide discretion" in areas of "medical and scientific uncertainty" to make policy choices. *Id.* at 36 (quoting *Gonzales v. Carhardt*, 550 U.S. 124, 163 (2007)). Idaho "relied on systematic reviews from around the world showing that medicalized transition carries substantial risks and unproven benefits." *Id.* The attached evidence confirms the state's reasonable reliance. And it reveals the district court's error in crediting WPATH.

Second, justice and efficiency counsel against remand. "[S]tate regulations of health and welfare receive 'a strong presumption of validity.'" Reply Br. 14 (quoting *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993)). And the only relevant facts on appeal are legislative facts that this Court reviews de novo. *Id.* at 17–18. WPATH's documents show the district court incorrectly understood the legislative facts. Judicial efficiency thus counsels in favor of this Court considering this evidence now. And so does the interest of justice. As the Supreme Court recognized, the district court issued an injunction far exceeding the bounds of Article III. It enjoined all of the applications of

7

Idaho's duly enacted law to anyone statewide. Justice favors this Court vacating that injunction as soon as possible.

Third, Plaintiffs had notice of these documents. Idaho notified Plaintiffs and the district court nearly five months ago about them. Hurst Decl. ¶ 7. Yet Plaintiffs refused to consent to the necessary protective order (despite previously agreeing to it) and the district court refused to enter it. Hurst Decl. ¶¶ 8–9. After refusing even to receive the documents, Plaintiffs cannot now claim any surprise. The Court should therefore allow supplementation.

## II. The Court should consider the WPATH documents as legislative facts.

Whether or not the Court supplements the record, it should consider the documents as legislative facts. Unlike adjudicative facts, these documents do not "concern[] the immediate parties—who did what, where, when, how, and with what motive or intent." Fed. R. Evid. 201, Advisory Comm. Notes. They do not "relate to the parties, their activities, their properties, their businesses." *Id.* Instead, they relate to the supposed medical consensus the district court relied on to rule that Idaho's Vulnerable Child Protection Act "undermines, rather than serves, the asserted goal of protecting children," expressly citing the "WPATH … guidelines." Mem. Decision and Order at 38, No. 1:23-cv-269 (D. Idaho Dec. 26, 2023), ECF No. 78.

In other words, they relate to "the reasonableness of a rule or other enactment," which is the classic purpose of non-adjudicative, legislative facts. Reply at 16–17 (citation omitted). And a court has broad freedom to consider any legislative facts it finds helpful, without procedural restraint:

8

> [A judge] may reject the propositions of either party or of both parties. He may consult the sources of pertinent data to which they refer, or he may refuse to do so. He may make an independent search for persuasive data or rest content with what he has or what the parties present. The parties do no more than to assist; they control no part of the process.

Fed. R. Evid. 201, Advisory Comm. Notes (cleaned up). The need to consider matters of legislative fact "renders inappropriate any limitation in the form of indisputability, any formal requirements of notice other than those already inherent in affording opportunity to hear and be heard and exchanging briefs, and any requirement of formal findings at any level." *Id.*. "[A] court may 'resort to legislative facts, whether or not those facts have been developed on the record.'" *Sachs v. Republic of Austria*, 737 F.3d 584, 597 n.10 (9th Cir. 2013), *rev'd on other grounds sub nom. OBB Personenverkehr AG v. Sachs*, 577 U.S. 27 (2015).

## CONCLUSION

The Court should grant the motion to supplement the record with the attached documents, or treat the documents as legislative facts that may be considered regardless of whether they are formally in the record.

9

Dated: August 16, 2024                    Respectfully submitted,

RAÚL R. LABRADOR
ATTORNEY GENERAL

ALAN M. HURST
SOLICITOR GENERAL

JOSHUA N. TURNER
CHIEF OF CONSTITUTIONAL LITIGATION
AND POLICY

JAMES E. M. CRAIG
CHIEF, CIVIL LITIGATION AND
CONSTITUTIONAL DEFENSE
OFFICE OF IDAHO
ATTORNEY GENERAL
700 W. Jefferson St., Suite 210
Boise, ID 83720
(208) 334-2400
alan.hurst@ag.idaho.gov
josh.turner@ag.idaho.gov
james.craig@ag.idaho.gov

JONATHAN A. SCRUGGS
HENRY W. FRAMPTON, IV
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@ADFlegal.org
hframpton@ADFlegal.org

/s/ Alan M. Hurst

JOHN J. BURSCH
LINCOLN DAVIS WILSON
ALLIANCE DEFENDING FREEDOM
440 First Street, NW, Suite 600
Washington, DC 20001
(202) 393-8690
jbursch@ADFlegal.org
lwilson@ADFlegal.org

DAVID H. THOMPSON
BRIAN W. BARNES
JOHN D. RAMER
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, DC 20036
202-220-9600
dthompson@cooperkirk.com
bbarnes@cooperkirk.com
jramer@cooperkirk.com

*Counsel for Appellant*

10

## CERTIFICATE OF COMPLIANCE

This motion complies with Fed. R. App. P. 27(d)(2)(A) because it contains 2,230 words, excluding parts exempted by Fed. R. App. P. 27(a)(2)(B) and 32(f).

This motion complies with Fed. R. App. P. 32(a)5) and 32(a)(6) because it has been prepared in Word 365 using a proportionally spaced typeface, 14-point Garamond.

/s/ *Alan M. Hurst*
Alan M. Hurst
Counsel for Appellant

August 16, 2024

11

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2024, I electronically filed the forgoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the CM/ECF system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

<i>/s/ Alan M. Hurst</i><br>
Alan M. Hurst<br>
<i>Counsel for Appellant</i>

August 16, 2024

12